UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMI NATURALITE, #185660                     Case No. 10-13564

          Plaintiff,                    District Judge Mark A. Goldsmith
v.                                           Magistrate Judge R. Steven Whalen

GREGORY FORNER, ET AL.,

          Defendants.
_____/

**REPORT AND RECOMMENDATION**

On September 8, 2010, Plaintiff Jami Naturalite, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983. Before the Court is a motion for summary judgment [Doc. #54] filed by Defendants MDOC, Rebecca Nevai, Patricia Caruso, Dennis Straub, Jeffery Stieve, Robin Gilbert, Debra Scutt, Joseph Barrett, Gregory Forner, Gary Johnson, Christopher Langley, Dean Dyer, Barry Lamb, Craig Furlong, Justin Palmer, Scott Norder, James Madery and James Long ("MDOC Defendants"). The motion has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that these Defendants be DISMISSED WITH PREJUDICE, except for the "failure to protect" claim against Defendants Forner, Barrett, Langley and Gilbert, which should be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a)..

**I.   FACTS**

Plaintiff's complaint names 29 Defendants (including three otherwise unidentified "John Doe" Defendants), alleging various constitutional violations in 164 numbered

paragraphs. The complaint breaks down the claims into eight general categories. The allegations against the 18 MDOC Defendants that have brought the present motion are summarized as follows.

1. <u>Failure to Place Plaintiff in True Custody Level</u> ( ¶¶ 6-10).  Plaintiff alleges that Assistant Resident Unit Supervisor ("ARUS") Gilbert and Assistant Deputy Warden ("ADW") Ford "waived her to level four [custody] for alleged medical mental health needs," rather than placing her in a level two facility that could accommodate her alleged gender identity disorder ("GID") needs.

2. <u>Failure to Protect</u> (¶¶ 11-21).  Plaintiff alleges that on September 23, 2007, she was attacked and injured by another inmate "in a widely-known blind spot right between the I & J yard telephones and the yard shack."  ¶ 11.  She claims that Defendant Forner, a corrections officer who was assigned to that area, "was inside of the housing unit, as usual, either kicking it with other officers or trying to catch a cat nap given his after-hours catering business."  ¶ 19.  Plaintiff alleges that Defendants Barrett, Langley and Gilbert were aware of assaults occurring in this area, but took no preventative action.

3. <u>Failure to Treat Serious Medical Needs</u> (¶¶ 22-63).  Many of the allegations in this section pertain to non-MDOC medical personnel employed by Correctional Medical Services ("CMS") or Prison Health Services, Inc. ("PHS"), who are not part of this motion.  However, he alleges that Defendant Nevai, who is employed by the State Department of Management and Budget, has liability because she apparently approved a contract with PHS. Plaintiff states, at  ¶ 44, "Given the litigious history and countless articles circulating throughout the country involving PHS INC, there is no way that Rebecca NEVAI should have ever entered into a contract with such a shoddy corporation like PHS INC."

    4. <u>Denied Chow Hall Meals for 28 Days</u> (¶¶ 64-74).  Plaintiff claims that Defendant Johnson, the Food Services Director, issued a memorandum changing the procedure for handicapped prisoners to obtain their food trays. Because the new rules prohibited him from sitting down momentarily in the food line in order to alleviate pain from walking to the chow hall, he complained to Johnson, Assistant Food Services Director Dyer, ADW Ryan (who is not part of this motion), and Warden Scutt. Discussions ensued, including a July 14, 2009 meeting with Ryan and an April 4, 2009 meeting with Barrett. On August 5, 2009, Officer Robinson provided Plaintiff with a wheeled walker with a seat.  Plaintiff claims that these Defendants' "careless and heartless actions" denied him food trays from July 9, 2009 through August 6, 2009.  ¶ 74.

    5. <u>Furlong Letter and Retaliation</u> (¶¶ 75-118). Plaintiff alleges that on October 2, 2009, Officer Lamb, on instructions from Officer Palmer, "ransacked" her cell. She concedes, however, that "ransacking is often an incident of prison life...." ¶78. ("Ransacking" a cell is also known as "searching" a cell). Plaintiff alleges that he gave a "kite" (a written note) to Defendant Furlong, complaining about the search of her cell, and that as a result of this complaint, Defendants Palmer, Norder, Ojeda, Lamb, Madery, Langley, Gilber, Barrett and Straub retaliated against him in various way.

    6. <u>Transportation Officers</u> (¶¶ 119-127). These allegations concerning damage to Plaintiff's footlockers and being made to ride in a cold van are directed at the "John Doe" Defendants, and are not pertinent to the present motion.

    7. <u>Failure to Treat Gender Identity Disorder</u> (¶¶ 128-155).  Plaintiff alleges that Dr. Jeffrey Stieve, the MDOC medical officer, instructed another doctor to prescribe and estrogen drug (Premarin) for sixty days.  ¶ 138. However, when Plaintiff could not verify hormonal treatment by an outside doctor, Stieve ordered that the Premarin prescription

not be reordered when the current prescription expired. ¶ 139. He did, however, instruct that Plaintiff be provided with a brassiere. ¶ 140. Plaintiff also alleges that Defendants Ojeda and Norder improperly referred to him "using male pronouns and possessive adjectives." ¶ 145. Finally, alleging that the MDOC's Policy Directive PD .04.06.184, dealing with evaluation and treatment of GID inmates, is "out of step with" medical standards, and that "Defendant Caruso is responsible for the unconstitutional contents of PD 04.06.184." ¶¶ 151, 154.

      8. <u>Assistant Attorney General Long</u> (¶¶ 156-164). Plaintiff alleges that he exchanged pre-litigation correspondence with James Long, an attorney with the Michigan Attorney General's Office, in an attempt to resolve his various grievances. Long responded, saying that there was nothing he could do. Plaintiff claims that "Long [was] required to take affirmative steps to remedy those constitutional violations," and that "Long has failed to do so and is liable for being aware of plaintiff's constitutional rights being violated but doing little about it."

      Although labelled a summary judgment motion, Defendant's motion also requests dismissal under Fed.R.Civ.P. 12(b)(6), for failure to state a claim on which relief can be granted. *Motion* [Doc. #54], p.2. Defendants argue for dismissal on the following grounds:

      (1) Failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a);

      (2) Eleventh Amendment immunity as to the MDOC and its employees sued in their official capacities;

      (3) No personal involvement on the part of Defendants Caruso, Straub, Scutt, Long and Nevai;

(4) Prosecutorial immunity as to Defendant Long;

(5) Dismissal as to Defendants Gilbert and Ford because Plaintiff has no liberty interest in procedures affecting security classification.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

---

[1] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### B. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).

---

[2] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION
#### A. Failure to Exhaust

Under the Prison Litigation Reform Act, specifically "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Exhaustion is required even if the relief that a plaintiff seeks is not available through the grievance process. *Porter v. Nussle*. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir.2011) (internal quotations and citations omitted).

Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford,* the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.,* 548 U.S. at 90, 126 S.Ct. at 2385.

The MDOC has a three-step grievance process, under which an inmate must name the specific defendant who is the subject of the grievance, and must timely take the grievance through all three steps. *See* MDOC Policy Directive ("PD") 03.02.130, Defendants' Exhibit A. The Defendants allege that the Plaintiff pursued only two grievances through Step III, and that the majority of his claims have not been exhausted. In her response [Doc. #82], Plaintiff alleges that she did not receive a response to many of his Step I or Step II grievances, and therefore the requirement of complete exhaustion is

waived.

In the interest of efficiency, I will in this section discuss only the two claims where (1) Plaintiff did not exhaust through Step III, and (2) she does not claim to have not received a Step II or Step III response. As to the remaining claims, it does not matter whether Plaintiff did or did not properly exhaust, because they are subject to dismissal on the merits under Rule 12(b)(6). In this regard, 42 U.S.C. § 1997(e)(c)(2) states:

> "In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."

*See also, Casanova v. Dubois,* 289 F.3d 142 (1st Cir.2002); *Clark v. Caruso,* 2010 WL 746417, *10 (E.D. Mich.2010).

The first unexhausted claim is that dealing with the alleged failure to place Plaintiff in the correct custody level. Plaintiff concedes that she did not administratively exhaust this claim against Defendants Gilbert and Ford, but states "[t]hat filing a grievance about it would not do any good because there was no level two facility that could house plaintiff." *Plaintiff's Response* [Doc. #82], at 2. Again, exhaustion is mandatory even if the grievance process cannot provide the relief requested. *Porter v. Nussle*; *Napier v. Laurel County, Ky.*[3]

---

[3] A dismissal for failure to exhaust is generally a dismissal without prejudice. This claim, however, also fails on the merits. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *See also Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification); *Cash v. Reno,* 1997 WL 809982, at *1–2 (6th Cir. 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because

The second clearly unexhausted claim is the "failure to protect" claim against Defendants Forner, Barrett, Langley and Gilbert. Plaintiff concedes that this was exhausted only through Step I, and that she feared a retaliatory transfer to another prison if he pursued it further. *Response*, p. 3. However, other than a self-serving and unsworn statement in the Response, there is no plausible evidence that Gilbert made the alleged threat. Nor has she raised a retaliation claim based on this incident. I note also that Plaintiff was apparently not deterred from submitting subsequent grievances and complaint. Because Plaintiff did not properly exhaust this claim, it should be dismissed without prejudice.

### B.  *Respondeat Superior* / **Personal Involvement**

In *Monell v. Department of Social Services.,* 436 U.S. 658, 692 (1978) the Supreme Court specifically held that in a §1983 action, liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability. *See also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)(at a minimum, a §1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate). Institutional liability may "also be premised on some policy that caused a deprivation of [Plaintiff's] Eighth Amendment rights." *Starcher v. Correctional Medical Services*, 7 Fed.Appx. 459, 465 (6th Cir. 2001).

In addition, the Plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Rizzo v. Goode*, 423 U.S. 362, 372, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Bellamy v. Bradley,* 729

---

he had no constitutional right to be held in a particular prison or security classification). I therefore recommend that this claim against Defendants Gilbert and Ford be dismissed with prejudice.

-10-

F.2d 416 (6th Cir. 1984). Mere failure to act does not amount to personal involvement. *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). Moreover, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

Defendants Caruso (the Director of the MDOC), Straub (the Deputy Director), Scutt (the Warden), Nevai (Department of Management and Budget Buyer), and Long (Assistant Attorney General) seek dismissal on the ground that they had no personal involvement in any of the Plaintiff's claims. I agree.

As to Caruso, Straub and Scutt, Plaintiff seeks mere supervisory or *respondeat superior* liability, and has not pled or otherwise shown that they had any personal involvement in this claims or "authorized, approved and knowingly acquiesced" in any unconstitutional conduct. While Plaintiff claims that Director Caruso is responsible for PD .04.06.184, dealing with evaluation and treatment of GID inmates, *Complaint*, ¶¶ 151, 154, she has not shown that the policy (Plaintiff's Exhibit A) is in any way constitutionally defective.

Plaintiff has claimed deliberate indifference to his medical needs, including GID, on the part of PHS and Dr. Stevenson, who was first employed by CMS, and then by its successor, PHS. The fact that Defendant Nevai may have negotiated a contract with PHS to provide medical services to MDOC inmates does not state a claim of her personal in Plaintiff's medical care. Either PHS and Stevenson were deliberately indifferent or they were not, regardless of their reputation within the prison community or whether Plaintiff thinks Nevai should have contracted with someone else. In fact, Stevenson has been dismissed with prejudice, and a Report and Recommendation to dismiss PHS is pending.

-11-

Defendant James Long is an Assistant Attorney General who represents the MDOC. Apart from the fact that he owes no duty whatsoever to the Plaintiff, he has no personal involvement in any day-to-day activities that take place within Michigan prisons. He merely represents the MDOC and its employees when they are sued.

Accordingly, Defendants Caruso, Straub, Scutt, Nevai and Long should be dismissed.

### C.  Denial of Meals

Plaintiff names Defendants Johnson, Scutt and Barrett. Again, Warden Scutt must be dismissed because she has no supervisory liability or personal involvement. As to Johnson and Barrett, Plaintiff concedes that after she complained about not being able to sit down in order to relieve pain, she had discussions with Barrett and Officer Ryan, and was accommodated with a wheeled walker with a seat, albeit not as expeditiously as she would have liked. Plaintiff's claim that she was denied food from July 9, 2009 through August 6, 2009 is completely implausible. Grievance JCF-09-07-1471-12i (Defendants' Exhibit D) notes that despite Plaintiff's claim that she was deprived of food, there was no decrease in her body weight.  Because Plaintiff has not plausibly shown a constitutional violation, the claim must be dismissed.[4]

### D.  Retaliation

Plaintiff alleges that after she complained about Officer Lamb searching, or "ransacking" her cell, Defendants Palmer, Norder, Ojeda, Lamb, Madery, Langley, Gilber, Barrett and Straub retaliated against her in various ways.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held

---

[4] The grievance also shows that Plaintiff failed to mention Defendant Johnson. Thus, the claim is not exhausted as to Johnson.

that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

Plaintiff meets the first prong–prisoners certainly have a First Amendment right to file grievances and to complain about prison conditions. The second prong–adverse action–is also deficient. Many of the occurrences here, such as mock pack-ups, cell searches and limitations on property, are ordinary incidents of prison life, and while undoubtedly annoying to the inmates, would not tend to deter a person of ordinary firmness from pursuing his or her First Amendment rights. Furthermore, a five-day loss of privileges based on a minor misconduct (¶ 96) does not constitute an adverse action under *Thaddeus-X*. *See Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir.2004) ( *citing Thaddeus–X,* 175 F.3d at 396–97); *Patterson v. Godward*, 2012 WL 652470, *4 (W.D. Mich. 2012).

Finally, even assuming that Plaintiff met the first two prongs of the retaliation analysis, she has not plausibly shown a causal connection between the two. She gave the "kite" complaining about the cell search to Furlong on October 3, 2009. This is alleged to be the triggering event for the retaliatory actions that followed. Six days later, Defendant Palmer denied her the use of the telephone. *Complaint*, ¶ 80. On October 17, two weeks after the kite, she was subject to a mock pack-up. ¶ 82. She received a minor misconduct, possibly on the same date. Other property and pack-up issues arose between October 26 and November 6. ¶¶ 97-99, 107. Plaintiff was shipped out on December 10, 2009.

Plaintiff does not contend that she did *not* have excess property, although she

-13-

blames some of the Defendants for that situation. Nor does Plaintiff plead any facts that would directly show a causal connection between these activities and his October 3rd complaint For example, she speculates that Palmer denied her use of a telephone on October 9, but presents no facts to substantiate this theory, other than perhaps the proximity in time.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin–Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir.2005); *Murphy v. Lane,* 833 F.2d 106, 108 (7th Cir.1987); *Vega v. DeRobertis,* 598 F.Supp. 501, 506 (C.D.Ill.1984), *aff'd,* 774 F.2d 1167 (7th Cir.1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy,* 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.' " *Harbin–Bey,* 420 F.3d at 580 (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir.1987)); *see also Skinner v. Bolden,* 89 F. App'x 579, 579–80 (6th Cir.2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *see also Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

This Plaintiff has shown absolutely nothing, beyond her own belief and conjecture, that there is any relationship between her complaint and the actions that followed, most of which are remote in time from October 3rd.  Because she has failed the *Iqbal* test of pleading a plausible claim for relief, Defendants Palmer, Norder, Ojeda, Lamb, Madery, Langley, Gilber, Barrett and Straub must be dismissed.

### E.   Failure to Treat GID

Plaintiff claims that Dr. Jeffrey Stieve, the MDOC medical officer, initially

prescribed, but then discontinued Premarin, an estrogen-based drug, when Plaintiff could not verify hormonal treatment by an outside doctor. At most, this states Plaintiff's disagreement with Dr. Stieve's medical judgment, or perhaps a claim of medical negligence. However, this is insufficient to support an Eighth Amendment claim of deliberate indifference under *Estelle v. Gamble,* 429 U.S. 97, 105-106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), where the Supreme Court held that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Also, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

### F. Eleventh Amendment

Finally, apart from the fact that no constitutional violations have been shown, the MDOC, a state agency, and Defendants sued in their official capacities, are immune from suit under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

### IV. CONCLUSION

For these reasons, I recommend that Defendants' motion [Doc. #54] be GRANTED, and that these Defendants be DISMISSED WITH PREJUDICE, except for

the "failure to protect" claim against Defendants Forner, Barrett, Langley and Gilbert, which should be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: March 2, 2012

-16-

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 2, 2012.

| | |
|---|---|
| Jami Naturalite, #185660<br>Ryan Correctional Facility<br>17600 Ryan Rd<br>Detroit, MI 48212-1155 | s/Johnetta M. Curry-Williams<br>Case Manager |