UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMI NATURALITE,　　　　　　　　　　　No. 10-13564

　　　　　Plaintiff,　　　　　　　　　　District Judge Mark A. Goldsmith
v.　　　　　　　　　　　　　　　　　　Magistrate Judge R. Steven Whalen

GREGORY FORNER, ET AL.,

　　　　　Defendants.
_____/

**REPORT AND RECOMMENDATION**

On September 8, 2010, Plaintiff Jami Naturalite, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, naming 27 Defendants, including the MDOC and numerous MDOC employees. On March 26, 2012, the Court entered judgment in favor of the Defendants, dismissing all claims. All claims against the MDOC Defendants were dismissed with prejudice, with the exception of the failure-to-protect claim against Defendants Forner, Barrett, Langley, and Gilbert, which were dismissed without prejudice for failure to exhaust administrative remedies.

Before the Court are Plaintiff's two motions for relief from judgment [Doc. No. 124 and Doc. No. 126], which have been referred for Reports and Recommendations under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both

motions be DENIED.[1]

## I. BACKGROUND FACTS

Plaintiff's contentions in these motions pertain only to the MDOC Defendants, and revolve around two claims, both based on an Eighth Amendment theory of deliberate indifference to serious medical needs: (1) the alleged failure to treat Gender Identity Disorder ("GID"), and (2) alleged failure to adequately treat or accommodate pain resulting from a lower spine condition.

Plaintiff's allegations regarding the failure to treat his GID are contained at ¶¶ 128-155 of her complaint. She alleged that Dr. Jeffrey Stieve, the MDOC medical officer, instructed another doctor to prescribe and estrogen drug (Premarin) for sixty days. ¶ 138. However, when Plaintiff could not verify hormonal treatment by an outside doctor, Stieve ordered that the Premarin prescription not be reordered when the current prescription expired. ¶ 139. He did, however, instruct that Plaintiff be provided with a brassiere. ¶ 140. Plaintiff also alleged that Defendants Ojeda and Norder improperly referred to her

---

[1] Plaintiff previously filed a post-judgment motion that the Court construed as a Rule 60(b) motion, and that motion was denied. *See Opinion and Order* [Doc. No. 113]. She then filed a second Rule 60(b) motion [Doc. No. 114] which the Court also denied [Doc. No. 115]. In that second motion, and similarly to the present motion, she essentially asked for affirmative and prospective relief regarding her medical treatment, which the Court found was not properly cognizable under Rule 60(b). The Sixth Circuit denied Plaintiff leave to proceed in forma pauperis on appeal of the denial of her Rule 60(b) motion, stating, "There is no apparent basis for an argument that the district court abused its discretion in this case, and an appeal would thus be frivolous." *Court of Appeals Order* [Doc. No. 122]. On March 11, 2016, the Sixth Circuit dismissed Plaintiff's appeal for failure to prosecute. *Court of Appeals Order* [Doc. No. 123].

"using male pronouns and possessive adjectives." ¶ 145. Finally, and pertinent to the present motion for relief from judgment [Doc. No. 126], Plaintiff alleged that the MDOC's Policy Directive PD .04.06.184, dealing with evaluation and treatment of GID inmates, is "out of step with" medical standards, and that "Defendant Caruso is responsible for the unconstitutional contents of PD 04.06.184." ¶¶ 151, 154.[2] In my Report and Recommendation, which was adopted, I found that the Policy Directive was not constitutionally defective.

      Plaintiff also claimed that she was effectively denied meals because she could not sit down in order to relieve pain. She claimed that Defendant Johnson, the Food Services Director, issued a memorandum changing the procedure for handicapped prisoners to obtain their food trays. Because the new rules prohibited her from sitting down momentarily in the food line in order to alleviate pain from walking to the chow hall, she complained to Johnson, Assistant Food Services Director Dyer, ADW Ryan and Warden Scutt. Discussions ensued, including a July 14, 2009 meeting with Ryan and an April 4, 2009 meeting with Barrett. On August 5, 2009, Officer Robinson provided Plaintiff with a wheeled walker with a seat. Plaintiff claims that these Defendants' "careless and heartless actions" denied her food trays from July 9, 2009 through August 6, 2009. ¶ 74. In my March 2, 2012 Report and Recommendation [Doc. No. 93], I addressed this claim as follows:

---

[2] Caruso was the MDOC Director.

> "As to Johnson and Barrett, Plaintiff concedes that after she complained about not being able to sit down in order to relieve pain, she had discussions with Barrett and Officer Ryan, and was accommodated with a wheeled walker with a seat, albeit not as expeditiously as she would have liked. Plaintiff's claim that she was denied food from July 9, 2009 through August 6, 2009 is completely implausible. Grievance JCF-09-07-1471-12i (Defendants' Exhibit D) notes that despite Plaintiff's claim that she was deprived of food, there was no decrease in her body weight. Because Plaintiff has not plausibly shown a constitutional violation, the claim must be dismissed."

Plaintiff bases her motion for relief from judgment in **Doc. #126** on a claim of newly discovered evidence, specifically a December 21, 2016 letter she received from Rachel Grossman, a paralegal at the Southern Poverty Law Center ("SPLC"). Ms. Grossman stated that the SPLC had partnered with the ACLU of Michigan "to send the Michigan Department of Corrections a 'liability letter' addressing the unconstitutionality of 'freeze frame' policies which limit transgender inmates' access to medical care while in state custody."[3] She further stated that in response to this letter, MDOC officials had invited discussion:

> "I write to inform you that, in response to our liability letters, prison officials have contacted us to discuss the MDOC policy directive governing the treatment of transgender individuals in custody. We hope to work with the state's attorneys to permanently improve the policy so that you and other transgender individuals are ensured constitutionally mandated treatment while incarcerated, both now and in the future. We also plan to provide the state's attorneys with your name so that they can ensure you receive the care you require."

---

[3] Ms. Grossman's letter is appended to Plaintiff's motion.

Plaintiff argues in ¶ 9 of her motion that "the 21 December 2016 letter from the SPLC is an admission by the MDOC that PD 04.06.184 is constitutionally flawed, and that steps must be taken to make it constitutional." She states at ¶ 10 that the letter "constitutes newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under rule 59(b)."

Plaintiff bases her motion for relief from judgment in **Doc. No. 124** on her claim that while a wheeled walker with a seat was previously provided to her, it was "abruptly taken away" from her on October 7, 2016. She claims that not having this wheeled walker adversely affects her safe movement about the facility and places her at risk for injury. Since judgment was entered in this case, Plaintiff was transferred first to the Oaks Correctional Facility in or about 2013, and then to the Macomb Correctional Facility in July of 2015. She alleges that the wheeled walker was taken away in 2016, while she was at the Macomb Facility, and in her motion states three "causes of actions," set forth in ¶¶ 141-149: (1) retaliation for complaining about her walker not being serviced; (2) deliberate indifference by P.A. McKissick, RN Adray, and HUM Cooper, who are employed at the Macomb Facility;[4] and (relatedly) (3) "denial of care" based on alleged

---

[4] At ¶ 143 of the motion, Plaintiff alleges:

"Thus, it can be said that PA McKissick, RN Adray, HUM Cooper, and others are being deliberately indifferent to Ms. Nauralite's serious medical needs because they abruptly discontinued and confiscated her rollator not because upon a medical professional judgment but rather they perceived that she did not need it without first properly understanding why it was given to Ms. Naturalite July 2009, and simply because they did not want to

findings by MDOC medical personnel that Plaintiff no longer suffered from lower back problems.

Plaintiff summarizes the basis for her motion [Doc. No. 124] at ¶ 9:

"Ms. Naturalite theorizes that this Court still has equitable powers and authority to order the Michigan Department of Corrections, whom was/is a Defendant in this matter, to reinstate Ms. Naturalite's speecial accommodation for the wheeled walker with a seat, and to provide it to her forthwith, or to show cause why the Michigan Deartment of Corrections should not be held liable for being deliberately indifferent to Ms. Naturalite's serious medical needs...."

## II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 60(b), the Court may grant a motion for relief from judgment for the following reasons

(1) mistake, inadvertence, surprise, or excusable neglect;

(2)newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); fraud

(3) (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4)the judgment is void;

(5)the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or,

(6) any other reason justifying relief from the operation of the judgment.

---

properly service her rollator by either facitlity staff mantenance personnel and/or the outside vendor."

A party must support a request under Rule 60(b) by clear and convincing evidence, and "relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448,454 (6th Cir. 2008)(citations omitted). A motion under Rule 60(b) is entrusted to the Court's discretion. *Henness v. Bagley*, 766 F.3d 550, 554 (6th Cir. 2014).

### III. DISCUSSION

#### Doc. No. 124

The MDOC Defendants were dismissed on March 26, 2012 [Doc. No. 97]. The events giving rise to Plaintiff's claims occurred while she was at the Robert G. Cotton Correctional Facility in Jackson, Michigan. She bases her present motion for relief from judgment on the removal of her wheeled walker, which occurred in October of 2016 at the Macomb Correctional Facility. Obviously, this action was not part of her original claim, which was based on events occurring well before 2016, and indeed, before 2012. The individuals that she claims violated her Eighth Amendment right by taking the walker–P.A. McKissick, RN Adray, and HUM Cooper–are employed at the Macomb Facility, and were not named in the original complaint. The Court has no personal jurisdiction over those individuals. And while the MDOC was named in the original complaint, Plaintiff has not provided any basis in law that would support her theory that somehow this Court has the "equitable" power to exercise continuing, post-judgment supervision over MDOC medical care in the context of a motion for relief from

judgment.[5]

Plaintiff's remedy is to pursue the matter through the MDOC grievance procedure (which she says she has done) and file a new cause of action. She has not met her burden of showing entitlement to relief from judgment under Rule 60(b).

### Doc. No. 126

Here, Plaintiff seeks relief from judgment based a theory of newly discovered evidence, specifically the December 21, 2016 letter from the SPLC indicating that the MDOC was willing to discuss the issue of medical treatment of transgender individuals in the prison system.

Rule 60(B)(2) provides a basis for a motion for relief from judgment "'when the movant presents newly discovered evidence that could not have been discovered earlier and that is relevant to the merits of the litigation.'" *Sueing v. Blanchard*, 2008 WL 2157065, at *4 (E.D. Mich. May 21, 2008)(Cleland, J.), quoting *Sevenson Environ. Servs. v. Shaw Environ., Inc.*, 246 F.R.D. 151, 153 (W.D.N.Y. Aug.20, 2007). "The [Rule 60(b)(2) ] movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of the trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) *the evidence must be admissible and of such importance that it probably would have changed the outcome*, and (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l*

---

[5] In fact, Plaintiff does not even cite Rule 60(b) or explain why of the six sections of that Rule apply to her case.

*Bd. of Teamsters*, 247 F.3d 370, 392 (2d Cir.2001) (citations omitted)(emphasis added).

Plaintiff construes Ms. Grossman's letter as the MDOC's admission of § 1983 liability regarding her challenge to the constitutionality of the MDOC Policy Directive. To qualify as newly discovered evidence under Rule 60(b)(2), the evidence must be admissible. To the extent that the letter reflects statements made by unnamed MDOC officials, it is inadmissible hearsay. In addition, the MDOC's apparent offer to merely discuss policies concerning transgender individuals with non-party SPLC is just that–an offer to *discuss* a policy. It is an admission of nothing. And even if the MDOC's willingness to discuss the matter were generously construed as an offer of compromise or a statement made during compromise negotiations, it would be inadmissible under Fed.R.Ev. 408(a). Ms. Grossman's letter does not meet the test for newly discovered evidence, and Plaintiff's motion should therefore be denied.

### IV. CONCLUSION

I recommend that Plaintiff's motions for relief from judgment [Doc. No. 124 and Doc. No. 126] both be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but

fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 12, 2018                             s/R. Steven Whalen
                                                    R. STEVEN WHALEN
                                                    U.S. MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify on January 12, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 12, 2018.

                                                    s/Carolyn M. Ciesla
                                                    Case Manager for the
                                                    Honorable R. Steven Whalen